JEFFREY I. WEINBERGER (SBN 056214)
*jeffrey.weinberger@mto.com*
TED G. DANE (SBN 143195)
*ted.dane@mto.com*
HEATHER E. TAKAHASHI (SBN 245845)
*heather.takahashi@mto.com*
ELIZABETH A. LAUGHTON (*pro hac vice*)
*elizabeth.laughton@mto.com*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ERIC K. CHIU (State Bar No. 244144)
*eric.chiu@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Plaintiffs
TAKEDA PHARMACEUTICAL CO., LTD.,
TAKEDA PHARMACEUTICALS U.S.A.,
INC., AND TAKEDA PHARMACEUTICALS
AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD., TAKEDA PHARMACEUTICALS U.S.A., INC., AND TAKEDA PHARMACEUTICALS AMERICA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> TWI PHARMACEUTICALS, INC., <br><br> Defendant. | Case No. 5:13-cv-02420 LHK (PSG) <br><br> **REPLY TO TWI'S OPPOSITION TO TAKEDA'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT** <br><br> Date:      April 9, 2015 <br> Time:      1:30 p.m. <br> Judge:     Hon. Lucy H. Koh <br>            San Jose Courthouse <br>            Courtroom 8 - 4th Floor |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................. 2

       A.     The Heightened Standards in *Therasense* Apply At Summary Judgment ................ 2

       B.     TWi Has Not Proffered Any Evidence That The Inventors Engaged in
              Inequitable Conduct During The Prosecution Of The '187 Patent .......................... 4

              1.     The '187 Patent Is Not Anticipated By Akiyama Under § 102(e) ............... 5

              2.     The '187 Patent Inventors Were The First To Invent The Claimed
                     Formulation In The United States .................................................... 6

              3.     TWi Has Evinced No Evidence of Intent To Deceive The PTO
                     During The Prosecution Of The '187 Patent .................................. 8

       C.     TWi Cannot Demonstrate Inequitable Conduct In The Prosecution Of The
              '158 Patent ...................................................................................................... 9

              1.     TWi Improperly has Introduced A New Inequitable Conduct Theory
                     In Response To Takeda's Motion For Summary Judgment .......................... 9

              2.     TWi Cannot Identify Evidence Sufficient To Establish Materiality
                     Under Its New Inequitable Conduct Theory ................................ 11

              3.     There Is No Clear And Convincing Evidence Of Intent To Deceive .......... 14

III.   CONCLUSION ........................................................................................................ 15

REPLY ISO MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
  346 F.3d 1075 (Fed. Cir. 2003) ............................................................................. 13

*Alexander Milburn Co. v. Davis-Bournonville Co.*,
  270 U.S. 390 (1926) ....................................................................................... 6, 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................ 3

*Application of Hilmer*,
  359 F.2d 859, 878 (C.C.P.A. 1966) ...................................................................... 7

*Cent. Admixture Pharm. Servs, Inc. v. Adv. Cardiac Solutions, P.C.*,
  482 F.3d 1347, 1356 (Fed. Cir. 2007) ................................................................ 10

*CSB-Sys. Int'l Inc. v. SAP Am., Inc.*,
  No. CIV.A. 10-2156, 2012 WL 1645582 (E.D. Pa. May 10, 2012) ..................... 10

*Cytyc Corp. v. Tripath Imaging, Inc.*,
  Nos. Civ. A. 03–11142, 03-12630, 2005 WL 3177877 (D. Mass.) Nov. 28, 2005) .............. 13

*Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) .......................................................................... 10

*Fiskars, Inc. v. Hunt Mfg. Co.*,
  221 F.3d 1318 (Fed. Cir. 2000 ............................................................................. 8

*Interwoven, Inc. v. Vertical Computer Systems*, No. CV 10-04645 RS, 2013 WL 75770
  (N.D. Cal., Jan. 4, 2013) ..................................................................................... 4

*In re Giacomini*,
  612 F.3d 1380 (Fed. Cir. 2010) ............................................................................ 7

*KFx Med. Corp v. Arthrex, Inc.*,
  No. 11cv198 DMS (BLM), 2013 WL 10125673 (S.D. Cal. July 10, 2013) ............ 3

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
  No. Civ.A.06–601, 2009 WL 2524577 (D. Del. Aug. 17, 2009) ........................... 10

*Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*,
  613 F. Supp. 2d 670 (D. Md. 2009), *vacated and remanded sub nom., Leviton Mfg. Co.*
  *v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353 (Fed. Cir. 2010) ........................ 7

*Medisim Ltd. v. BestMed LLC*,
  910 F. Supp. 2d 591 (S.D.N.Y. 2012) ................................................................... 3

REPLY ISO MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   830 F. Supp. 2d 815 (N.D. Cal. 2011) ................................................................. 3, 9, 15

4

5

*Modine Mfg. Co. v. Allen Grp., Inc.*,
   917 F.2d 538 (Fed. Cir. 1990) ....................................................................................... 7

6

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
   695 F.3d 1285 (Fed. Cir. 2012) ..................................................................................... 8

7

8

*Perricone v. Medicis Pharm. Corp.*,
   432 F.3d 1368 (Fed. Cir. 2005) ................................................................................... 12

9

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
   225 F.3d 1315 (Fed. Cir. 2000) ..................................................................................... 7

10

11

*ROY-G-BIV Corp. v. ABB, Ltd.*
   No. 6:11-cv-622, 2014 WL 7717591 (E.D. Tex. Aug. 8, 2014) ................................... 3

12

13

*Scott v. Koyama*,
   281 F.3d 1243 (Fed. Cir. 2002) ..................................................................................... 6

14

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
   758 F.2d 613 (Fed. Cir. 1985) ....................................................................................... 7

15

16

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
   276 F.3d 1304 (Fed. Cir. 2001) ..................................................................................... 3

17

18

*Solomon v. Kimberly–Clark Corp.*,
   216 F.3d 1372 (Fed. Cir. 2000) ..................................................................................... 8

19

*Spansion, Inc. v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010) ..................................................................................... 5

20

21

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*,
   763 F. Supp. 2d 800 (E.D. Va. 2011) ........................................................................... 7

22

23

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ....................................................................... 1, 2, 9, 14

24

*Worldwide Home Products, Inc. v. Bed, Bath and Beyond, Inc.*,
   No.11CV3633, 2015 WL 568710 (S.D.N.Y. Feb. 11, 2015) ................................. 14, 15

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**FEDERAL STATUTES**

35 U.S.C. § 102 (pre-AIA) ........................................................................................4-7

35 U.S.C. § 112, ¶ 1 (post-AIA) ................................................................................ 11

35 U.S.C. § 282 .......................................................................................................... 11

**LEGISLATIVE MATERIALS**

Leahy-Smith American Invents Act, Pub.L. No. 112–29, 125 Stat. 284 (2011) ...................... 6, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

In response to Takeda's charges of patent infringement, TWi alleged the affirmative defense of inequitable conduct, claiming that the inventors and prosecuting attorney of the '187 and '158 patents committed inequitable conduct during prosecution. To avoid summary judgment with respect to its inequitable conduct defenses, TWi must come forward with evidence sufficient to demonstrate both "but for" materiality *and* specific intent to deceive. With respect to materiality, TWi must identify clear and convincing evidence that the claims of the '187 and '158 patents would not have issued if the allegedly misrepresented or omitted information had been provided to the PTO. With respect to intent, TWi must point to specific facts that, if proven, could "*require* a finding of deceitful intent." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).[1] Further, the evidence must rise to the level of showing that intent to deceive is the "single most reasonable inference" to be drawn from the evidence. *Id.* TWi has not pointed to such evidence nor can it.

Because TWi's response falls far short of carrying this heavy burden to prove inequitable conduct, much less by clear and convincing evidence, summary judgment of this defense is warranted. With respect to the '187 patent, TWi's inequitable conduct theory is premised on the assertion that the inventors' statement to the PTO that they were the "first" inventors is false because they knew that Takeda had previously made an embodiment of their claimed invention in Japan. The uncontroverted evidence, however, establishes that the inventors of the '187 patent conceived of their invention prior to the U.S. filing date for Akiyama,[2] and that they are the first inventors under U.S. patent law. In addition, not only are the inventor declarations filed with the

---

[1] Internal quotation marks and citations omitted, except as otherwise noted.

[2] Both TWi and Takeda use "Akiyama" to refer collectively to Akiyama I (Ex. 18) and Akiyama II (Ex. 19). Numbered exhibits 1–40 are attached to the Takahashi Declaration filed in support of Takeda's Motion for Summary Judgment unless otherwise noted, and numbered exhibits 59-61 are attached to the Takahashi Declaration filed herewith. Lettered exhibits (*e.g.*, A, B, C) are attached to the Mizerk Declaration filed in support of TWi's Response to Takeda's Motion for Summary Judgment Regarding Inequitable Conduct.

1  PTO not false, there is *no evidence* of any intent to deceive the PTO regarding the inventorship or

2  the nature of the claimed invention of the '187 patent.

3        With respect to the '158 patent, TWi has abandoned the inequitable conduct theory pled in

4  its Answer. Instead, it now contends (for the first time) that the inventors and prosecuting attorney

5  engaged in inequitable conduct by failing to inform the PTO that the Akiyama reference they

6  submitted to the PTO disclosed the particular formulation tested in Example 2 of the '158 patent.

7  TWi's argument that this alleged nondisclosure was material is belied by the issued claims and

8  prosecution history of the '158 patent. Tellingly, TWi offers *no evidence* of specific intent to

9  deceive, asking this Court, in direct contradiction to *Therasense*, to infer intent to deceive from

10 materiality. Contrary to TWi's assertions, the non-disclosure of the specific relationship between

11 the formulation tested in the '158 patent and the teachings of the Akiyama patent is fully

12 consistent with the belief of the inventors and prosecuting attorney that the '158 invention

13 consisted not of a novel formulation, but of a new method of using known formulations such as

14 the formulation disclosed in Akiyama. Given the existence of a reasonable inference of blameless

15 intent, TWi cannot establish intent to deceive.

16       There is simply no evidence of inequitable conduct by the inventors or their patent

17 attorney. Without evidence, TWi cannot carry its burden to prove inequitable conduct at trial, and

18 Takeda is entitled to judgment as a matter of law as to TWi's inequitable conduct defenses.

19 **II.**    **<u>ARGUMENT</u>**

20       **A.**    **<u>The Heightened Standards in *Therasense* Apply At Summary Judgment</u>**

21       In 2011, the Federal Circuit "tighten[ed] the standard[]" for finding inequitable conduct,

22 because it was concerned that the doctrine was "appearing in nearly every patent suit, and . . .

23 cluttering up the patent system." *Therasense,* 649 F.3d at 1289-90. *Therasense* held that

24 inequitable conduct requires both "but-for materiality" and "specific intent to deceive." *Id.* at

25 1290-92. The court specified the extremely high evidentiary threshold for establishing the intent

26 element: "[T]he evidence must be sufficient to *require* a finding of deceitful intent in light of all

27 the circumstances . . . . Hence, when there are multiple reasonable inferences that may be drawn,

28 intent to deceive ***cannot be found***." *Id.* (emphasis added).

1        TWi seeks to avoid the impact of *Therasense* by arguing that "Takeda's recitation of the

2    'only reasonable inference' trial standard is inapposite" at the summary judgment stage. TWi

3    Opp'n 4. To the contrary, in deciding a motion for summary judgment, the burden of proof must

4    always be considered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986)) (heightened

5    standard of clear and convincing evidence, which would be party's burden at trial, is to be

6    considered when evaluating sufficiency of evidence on motion for summary judgment). Thus, the

7    "non-moving party . . . cannot defeat summary judgment simply by insisting that a genuine

8    dispute exists or even by proffering some evidence; in any case, the non-moving party . . . must

9    produce evidence . . . *sufficient* to prove [the challenged claim or defense]." *Smith & Nephew, Inc.*

10   *v. Ethicon, Inc.*, 276 F.3d 1304, 1316-17 (Fed. Cir. 2001).

11       Accordingly, numerous courts, including in this District, have recognized that a party

12   alleging inequitable conduct can survive summary judgment only by identifying evidence that,

13   viewed in the light most favorable to the non-movant, ***requires*** a finding of deceptive intent. *See,*

14   *e.g.*, *Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 829-830 (N.D. Cal.

15   2011) (granting summary judgment of no inequitable conduct where the evidence was

16   "insufficient to require a finding of deceitful intent" because the plaintiff "provide[d] evidence

17   which permits the reasonable inference" that the patent applicant acted in good faith); *ROY-G-BIV*

18   *Corp. v. ABB, Ltd.* No. 6:11-cv-622, 2014 WL 7717591, at *3 (E.D. Tex. Aug. 8, 2014) (granting

19   summary judgment of no inequitable conduct where alleged infringer "failed to provide clear and

20   convincing evidence that [the patent applicant] had intent to deceive the PTO during prosecution

21   or that intent to deceive is the single most reasonable inference based on the evidence"); *KFx Med.*

22   *Corp v. Arthrex, Inc.*, No. 11cv198 DMS (BLM), 2013 WL 10125673, at *4 n.1 (S.D. Cal. July

23   10, 2013) ("This Court agrees with Plaintiff's interpretation of *Therasense*: That summary

24   judgment is appropriate unless the evidence requires a finding of deceptive intent."); *Medisim Ltd.*

25   *v. BestMed LLC*, 910 F. Supp. 2d 591, 626 (S.D.N.Y. 2012) (granting summary judgment of no

26   inequitable conduct where alleged infringer failed to provide evidence "sufficient to *require* a

27

28

finding of deceitful intent in the light of all the circumstances.").[3] Absent such evidence, the Court should grant Takeda's motion.

**B.   TWi Has Not Proffered Any Evidence That The Inventors Engaged in Inequitable Conduct During The Prosecution Of The '187 Patent**

TWi contends that Dr. Vakily and Dr. Taneja engaged in inequitable conduct with respect to the '187 patent by signing the PTO's "Declaration and Power of Attorney for Patent Application" form, which states that the inventors were the "original, first and joint inventor[s]" of the claimed subject matter. *See* Ex. 40 (Excerpts of '187 File History) at TAKEDA012476. TWi offers two theories for why this was a material misstatement to the PTO: First, TWi contends that Dr. Vakily and Dr. Taneja were not the "first" inventors of the claimed formulation because they did not conceive of their claimed invention until after the effective filing date of Akiyama on October 15, 2003, and therefore Akiyama is invalidating prior art to the '187 patent under 35 U.S.C. § 102(e); TWi Opp'n 5 ("Akiyama became § 102(e) prior art on October 15, 2003"). Second, TWi contends that Dr. Vakily's and Dr. Taneja's statement to the PTO that they were the "first" inventors was false because they knew that Takeda had previously made an embodiment of their claimed invention in Japan.

As set forth in further detail below, TWi's arguments fail on both counts. The evidence establishes that Dr. Vakily and Dr. Taneja conceived of their claimed formulation prior to the U.S. filing date for Akiyama, and therefore Akiyama is not § 102(e) prior art to the '187 patent. Moreover, TWi has cited no other basis for invalidating the '187 patent based upon the foreign invention of TAK-390MR. Because TWi cannot show that the Applicant misrepresented material information to the PTO, nor any evidence of intent to deceive, the Court should grant summary judgment of no inequitable conduct with respect to the '187 patent.

---

[3] TWi's reliance on *Interwoven, Inc. v. Vertical Computer Systems*, No. CV 10-04645 RS, 2013 WL 75770 (N.D. Cal., Jan. 4, 2013), TWi Opp'n 4, is misplaced. There, it was the *accused infringer* who sought summary judgment. After *Therasense*, the circumstances under which an accused infringer would be entitled to summary judgment of inequitable conduct likely will be exceedingly rare. In any event, it was in that wholly inapposite context that the court stated that "[i]t is enough to defeat summary judgment that a question remains as to the inventor's credibility," which is entirely consistent with the high hurdle for a defendant to establish deceptive intent. *Interwoven*, 2013 WL 75770, at *4.

### 1.   The '187 Patent Is Not Anticipated By Akiyama Under § 102(e)

Under 35 U.S.C. § 102(e), "[a] person shall be entitled to a patent unless . . . the invention was described in . . . a patent granted on an application for patent by another filed in the United States *before the invention* by the application for patent." (Emphasis added.) A prior art reference can anticipate an invention under § 102(e) "only if the reference patent's effective filing date is before the date of invention." *Spansion, Inc. v. Int'l Trade Comm'n,* 629 F.3d 1331, 1356 (Fed. Cir. 2010). As set forth in detail in Takeda's opening brief as well as its Opposition to TWi's Motion for Summary Judgment [D.N. 149], incorporated here, the undisputed facts establish that Dr. Vakily and Dr. Taneja conceived of all the limitations of the asserted claims by at least March 2003 — well before the effective filing date of Akiyama on October 15, 2003. *See* Takeda Br. 2-5; Takeda Opp'n 7-10.

Although TWi argues that the inventors could not have conceived of the "at least 10%" limitation in claim 1 until they received the results of the site-of-absorption study in December 2003, the evidence establishes that they had conceived of a dosage form "wherein the second dose contains *at least* 10% more of the PPI than the first dose" (emphasis added) by at least March 2003 when Dr. Vakily prepared the paper summarizing his modeling work, as set forth in detail in Takeda's Opposition to TWi's Motion for Summary Judgment. Ex. 1 ('187 Patent) at claim 1 (emphasis added); *see* Vakily Decl. ¶¶ 2-4; Vakily Decl. Ex. 1 (PK-PD Modeling) at TAKEDA012829-30 (summarizing in Table 8 simulations of dosage forms in which the second dose would contained twice as much PPI as the first dose, because "[t]he relative oral bioavailability" of the second dose would be "50% of the first dose"). That the inventors *confirmed* their hypothesis that the second dose must contain more drug than the first dose in December 2003, following a clinical study assessing relative drug absorption from different parts of the gastrointestinal tract, is irrelevant to when they *conceived* of their invention, which was March 2003. *See* Ex. 61 (Taneja Dep.) at 14:6-15:23; Ex. 13 (Vakily Dep. 1/28/15) at 225:19-226:23. The '187 patent therefore is not anticipated by Akiyama. Accordingly, Dr. Vakily and Dr. Taneja were the "first" inventors of the claimed formulation, as they correctly stated in the inventor declaration. *See* Ex. 40 (Excerpts of '187 File History) at TAKEDA012476.

## 2. The '187 Patent Inventors Were The First To Invent The Claimed Formulation In The United States

TWi also contends that the inventors intended to mislead the PTO by representing themselves as the "first" inventors of the claimed formulation when they knew that Takeda had previously made an embodiment of the claimed formulation in Japan. TWi's argument appears to be that the "original, first and joint inventor" language in the inventor declaration form imposes an obligation on patent applicants to be the "first to invent," anywhere in the world, over-and-above the statutory requirements of novelty under § 102 and nonobviousness under § 103. Thus, according to TWi, even if Akiyama is not prior art to the '187 patent, the invention by Takeda of TAK-390MR and subsequent patent application filed in Japan constituted a "first invention" within the meaning of U.S. patent law.

TWi's position is inconsistent with the United States patent laws.[4] Courts have long recognized that, while § 102 requires "that the inventor was the first to invent," Ex. 59 (Patent Case Management Judicial Guide (Federal Judicial Center 2009)) at 11-36 to 11-43, "first to invent" effectively means "first to invent in this country." *See id.*; *see also Scott v. Koyama*, 281 F.3d 1243, 1247 (Fed. Cir. 2002) ("Thus the inventor of an invention of foreign origin may rely on the date that the invention was disclosed in the United States, as a conception date for priority purposes."); *see also* §§ 102(g) (granting priority to the first "invention . . . made in this country"). As Justice Holmes observed in *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390 (1926):

> **Among the defences to a suit for infringement the fourth specified by the statute is that the patentee "was not the original and first inventor or discoverer of any material and substantial part of the thing patented."** Taking these words in their natural sense as they would be read by the common man, obviously one is not the first inventor if, as was the case here, somebody else has made a complete and adequate description of the thing claimed before the earliest moment to which the alleged inventor can carry his invention back. **But the words cannot be taken quite so simply. . . . [B]y the words of the statute a previous foreign**

---

[4] As Takeda noted in its opening brief, the Leahy–Smith America Invents Act ("AIA"), Pub.L. No. 112–29, 125 Stat. 284 (2011), converted the patent system from "first-to-invent" to "first-inventor-to-file." However, the patents-in-suit issued under the earlier first-to-invent framework.

**invention does not invalidate a patent granted here if it has not been patented or described in a printed publication.**

*Id.* at 399-400 (emphasis added); *see In re Giacomini*, 612 F.3d 1380, 1384 (Fed. Cir. 2010) (citing *Milburn* for the fact that the first-inventor rule is "subject to certain exceptions"). Thus, whether the patentee is the original and first inventor is determined by the conditions for patentability in §§ 102 and 103, and not "simply" by asking whether the patentee was the first inventor of the claimed subject matter anywhere in the world. *See Application of Hilmer*, 359 F.2d 859, 878 (C.C.P.A. 1966) ("[T]he limitations in sections 102(a) and 102(g) to 'in this country,' and the specifying in 102(e) of an application filed 'in the United States' clearly demonstrate[] a policy in our patent statutes to the effect that knowledge and acts in a foreign country are not to defeat the rights of applicants for patents....").

TWi cites a number of cases that stand for the unremarkable proposition that misrepresenting someone else's invention as your own to the PTO may serve as the basis for an inequitable conduct claim. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000) (scientists who collaborated with the named inventors were not named as inventors); *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 763 F. Supp. 2d 800, 809 (E.D. Va. 2011) (evidence that one of the patentee's former employees was the true inventor); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 695 (D. Md. 2009), *vacated and remanded sub nom., Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353 (Fed. Cir. 2010) (evidence that the named inventors were not true inventors); *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 541-42 (Fed. Cir. 1990) (some evidence showed that named inventor had help from unnamed co-inventors); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (same). These cases arose in the context of "derivation," codified at § 102(f), which states that a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." § 102(f). Section 102(f) thus "bars issuance of a valid patent to a person or persons who derive the conception of the invention from any other source or person." *Solomon v. Kimberly–Clark Corp.*, 216 F.3d 1372, 1381 (Fed. Cir. 2000).

1    TWi makes no allegation that derivation is applicable here. Nor could it, because there are

2    no facts to suggest that Dr. Vakily and Dr. Taneja derived their invention from Takeda, as opposed

3    to their independent work. To the contrary, TWi implicitly acknowledges that the '187 inventors

4    independently developed their claimed formulation. *See* TWi Opp'n 4-5 (stating that Takeda "had

5    invented the same thing" as the '187 inventors). And, in fact, the evidence clearly demonstrates

6    that Dr. Vakily and Dr. Taneja conceived of their invention *before* they learned of TAK-390MR

7    from Takeda. *See* Vakily Decl. ¶¶ 3-4; Vakily Decl. Ex. 1 (PK-PD Modeling); Ex. 23 at

8    TAKEDA0800423-40 (email from Dr. Vakily to Dr. Taneja with modeling paper dated March 19,

9    2003); Ex. 13 (Vakily Dep. 1/28/15) at 225:19-226:23; Ex. C (Vakily Dep.) at 149:4-150:23; Ex.

10   F at TAKEDA0850085. Accordingly, TWi's derivation cases are not relevant, and TWi cannot

11   establish any materiality of Akiyama to the '187 patent.

12   ### 3.   <u>TWi Has Evinced No Evidence of Intent To Deceive The PTO During The Prosecution Of The '187 Patent</u>

13   Summary judgment is appropriate on the entirely separate and independent ground that

14   TWi has evinced *no* evidence that the Applicant intended to mislead the PTO regarding

15   inventorship. Instead, TWi asks this Court to infer intent from a single document: the declaration

16   that stated the inventors were the "first" to invent the claimed formulation. Even if this alleged

17   misrepresentation were material — and it is not — "materiality and intent are two separate and

18   distinct requirements . . . and both must be shown by clear and convincing evidence." *Outside the*

19   *Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1294 (Fed. Cir. 2012). As discussed

20   above, neither Akiyama nor the invention of TAK-390MR in Japan anticipates the '187 patent,

21   and there is absolutely no evidence that the Applicant knew or believed otherwise during the

22   prosecution of the '187 patent.[5]

23

24

25   _____

26   [5] The '187 inventors' submission of the Akiyama references to the PTO is further evidence of their good faith. *See* Ex. 40 (Excerpts of '187 File History) at TAKEDA012419 (submission of Akiyama I); *id.* at TAKEDA009580 (submission of Akiyama II). No further disclosure regarding

27   Akiyama was required of the inventors. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) (rejecting the argument that the patentee should have identified a prior art

28   reference more explicitly and emphasized its relevance).

Because TWi has failed to produce evidence "sufficient to *require* a finding of deceitful intent in the light of all the circumstances," the Court should grant Takeda's motion of summary judgment of no inequitable conduct. *Therasense,* 649 F.3d at 1290-91 ("[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."); *Mformation Techs.,* 830 F. Supp. 2d at 829-30 (holding that where good faith may be inferred from the evidence, a finding of deceitful intent is not required, and summary judgment is appropriate); *see also supra* pp. 3-4 (collecting cases).

### C.   TWi Cannot Demonstrate Inequitable Conduct In The Prosecution Of The '158 Patent

The inequitable conduct theory TWi has asserted in its opposition brief with respect to the '158 patent — that the inventors and their counsel failed to disclose that the formulation tested in the '158 patent was disclosed in Akiyama — is entirely different from that which it alleged in its Answer. A litigant cannot raise a new inequitable conduct theory for the first time in response to a summary judgment motion and, accordingly, the Court should disregard TWi's new theory and grant Takeda's motion.

Even if the Court were to consider TWi's new theory, however, it should still grant Takeda's motion. The '158 patent relates to a novel method of treatment for a known composition. TWi does not explain how the patent examiner's knowledge that the pharmaceutical composition tested in the '158 patent was first disclosed in Akiyama would have resulted in the method claims of the '158 patent not being allowed. Further, TWi offers no evidence of any purported intent to deceive the PTO, relying instead on mere attorney argument and supposed inferences to be drawn from the alleged insufficient disclosure.

#### 1.   TWi Improperly Has Introduced A New Inequitable Conduct Theory In Response To Takeda's Motion For Summary Judgment.

TWi alleged its inequitable conduct defense with regard to the '158 patent in its Answer to Takeda's Second Amended Complaint. *See* [D.N. 104]; *see also* Ex. 60 (Invalidity Contentions) at 115-19. TWi there alleged that the inventors committed inequitable conduct by making a false statement to the PTO when they declared that they were the inventors of the subject matter of the '158 patent. *See* [D.N. 104] at Ninth Affirmative Defense, ¶ 1. TWi further alleged that "[t]he

named inventors of the '158 Patent could not have been those that invented its claimed subject matter" and that "the incorrect inventorship of the '158 Patent was a purposeful attempt to mislead the USPTO." *Id.* at ¶¶ 10-11. TWi summarizes: "Thus, the original declaration, stating that the '158 Patent's inventors were the original inventors of the subject matter of the patent, was false and misleading and was submitted with a specific intent to deceive." *Id.* ¶¶ 11, 13 ("Thus, the declarations filed by Mueller stating that the inventors were the first inventors of the invention claimed in the '158 Patent when in fact she and the inventors knew that this was not true were affirmative acts of egregious misconduct material to the patentability of the '158 Patent.")

As the foregoing reflect, these allegations concern an alleged false declaration and misrepresentations regarding inventorship. Nowhere does TWi's Answer allege a failure to disclose the precise formulation tested in the '158 patent, or that that formulation was first disclosed in Akiyama. Under such circumstances, TWi should not be permitted to pursue its new inequitable conduct theory on summary judgment. As one court has succinctly explained:

> "[I]nequitable conduct, while a broader concept than fraud, must be *pled* with particularity.*" Cent. Admixture Pharm. Servs, Inc. v. Adv. Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (emphasis added) (*quoting Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Defendants' pleadings must "give notice to the other party of the facts on which the defense is premised." *Id.* at 1357. "Without such a pleading, a party may not raise, as an affirmative defense, inequitable conduct in a motion for summary judgment." *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, No. Civ.A.06–601, 2009 WL 2524577, at *2 (D. Del. Aug. 17, 2009). <u>Repeatedly, courts have declined to allow a defendant to assert a new theory of inequitable conduct if the answer and counterclaims asserted a different theory of inequitable conduct than that relied upon in summary judgment proceedings</u>.

*CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. CIV.A. 10-2156, 2012 WL 1645582, at *6 (E.D. Pa. May 10, 2012) (emphasis added) (collecting cases in which courts have found that failure to amend an Answer to disclose a new theory of inequitable conduct precluded reliance on that theory); *id.* at *7 (granting summary judgment of no inequitable conduct and observing that "Plaintiff filed a lengthy summary judgment motion on the original inequitable conduct theory, only to be casually met with a new theory argued for the first time in Defendant's Response to that Motion."). Similarly, this Court should not permit TWi to avoid summary judgment by advancing a theory not disclosed in its pleadings.

1

### 2. TWi Cannot Identify Evidence Sufficient To Establish Materiality Under Its New Inequitable Conduct Theory

2

3        Even if the Court considers TWi's new inequitable conduct theory, there is insufficient

4    evidence in support of that theory to survive summary judgment. With regard to the "but for"

5    materiality element, TWi fails to demonstrate how the Examiner's knowledge that the formulation

6    tested in the '158 patent is the same as that disclosed in Akiyama would have prevented issuance

7    of the claims of the '158 patent.

8        First, TWi makes much of the fact that the '158 patent does not specify the exact

9    formulation of the dexlansoprazole product tested in Example 2, instead disclosing ranges of

10   acceptable amounts for the components of each of the two types of granules present in the

11   capsules and listing the excipients by their general categories.[6] *See* TWi Opp'n 11-13; '158 patent

12   at Table 2, Table 3. This argument ignores the fact that the *claims* of the '158 patent do not recite

13   any particular amounts of dexlansoprazole or excipients, nor do they specify what excipients must

14   be used in the claimed formulation. The only limitations relating to the components of the

15   formulation related to: (i) the pH ranges at which the two types of enteric-coated granules were

16   designed to release; and (ii) the relative weight proportions of the two types of granules.[7]

17       Accordingly, the Examiner did not need to know the precise formulation of the

18   embodiment tested in Example 2 of the '158 patent in order to compare the broad formulation

19   limitations in the claims of the '158 patent to Akiyama, which discloses several formulations

20   satisfying these limitations. And, in fact, the Examiner performed just such a comparison. *See*

21   [6] TWi also takes issue with the '158 patent's use of ranges for the ingredients of the capsule listed
22   in Table 3. TWi Opp'n. 13. TWi offers no support for its suggestion that the mere disclosure of a
     composition using ranges for certain preferred ingredients is objectionable. TWi's complaint really
     appears to be that the inventors failed to disclose the "best mode" known to the inventors of
23   carrying out their invention. *See* 35 U.S.C. § 112, ¶ 1. TWi does not, however, allege a violation
     of section 112 in this litigation because the AIA amended 35 U.S.C. § 282 to eliminate "failure to
24   disclose the best mode" as grounds for "[i]nvalidity of the patent or any claim in suit." AIA,
     Pub.L. 112-29, H.R. 1249, Section 15, enacted September 16, 2011 and effective as of September
25   16, 2011 (stating that the best mode defense would no longer be available in proceedings on or
     after the effective date of the AIA).

26   [7] TWi asserts, without citation or explanation, that the inventors "misleadingly insinuated that 30
     and 60 mg versions of the formulation were tested." TWi Opp'n 12. The '158 patent clearly states
27   that "TAK-390 MR 90 mg" was tested in the clinical study described in Example 2. '158 patent,
     col. 23, ll. 59-60. Nowhere does the '158 patent suggest that other doses were tested in clinical
28   studies.

1  Takeda Opening Br. at 17-18; *see* Ex. 39 (Excerpts of '158 File History) at TAKEDA006887

2  (showing examiner considered Akiyama I); *id.* at TAKEDA006862, -85 (showing examiner

3  considered Akiyama II).

4        TWi nonetheless suggests that the fact that the precise formulation of the embodiment

5  tested in Example 2 of the '158 patent is disclosed in Akiyama should have been disclosed to the

6  Examiner, because this fact demonstrates that the claims of the '158 patent are anticipated by

7  Akiyama under principles of inherency. TWi Opp'n 16. Neglecting the "but for" materiality

8  standard, TWi fails to explain why the Examiner would not have allowed the claims had she been

9  informed of this fact. Nonetheless, as explained in detail in Takeda's Opposition to TWi's Motion

10 for Summary Judgment, Akiyama's disclosure of TAK-390MR does not inherently disclose the

11 *method of treatment* taught by the '158 patent, which necessarily derives from recognition of a

12 lack of food effect for certain dexlansoprazole compositions that simply did not exist until the

13 '158 invention. Takeda Opp'n 14-18. To the contrary, the method disclosed in the '158 patent is a

14 new method of using an existing composition and was properly claimed in the '158 patent. *See*

15 *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378 (Fed. Cir. 2005) ("New uses of old

16 products or processes are indeed patentable subject matter.").

17       Equally unavailing is TWi's contention that the "the '158 inventors and their patent

18 attorney . . . argued to the PTO that the formulation was a novel aspect of the invention." TWi

19 Opp'n 13. TWi neither cites nor discusses any purported representations by the *inventors*

20 regarding any points of novelty of the '158 patent. With respect to patent attorney Mueller, the

21 very statement upon which TWi relies belies its contention. Ms. Mueller, in remarks to the PTO,

22 simply *described* the *in vivo* release pattern of the pharmaceutical composition disclosed in

23 Examples 1 and 2 and in the pending claims. *See* TWi Opp'n 13-14; *see* Ex. T at

24 TAKEDA006943-44 (stating that the pharmaceutical composition "produces a dual peaked

25 pharmacokinetic profile"). At no time during prosecution did Ms. Mueller represent to the PTO

26 that the formulation disclosed and claimed in the '158 patent, or even its dual-peak profile, was a

27 point of novelty. To the contrary, as Ms. Mueller testified: "we viewed [the '158 patent] as a *new*

28

1    *method of treating* using a *known formulation*." Ex. 9 (Mueller Dep.) at 80:17-19 (emphasis

2    added).

3         Finally, TWi turns to the Examiner's Reasons for Allowance, suggesting that the Examiner

4    incorrectly believed that the formulation of the '158 patent was itself novel and allowed the claims

5    of the '158 patent for that reason. TWi then suggests that Ms. Mueller erred in some way by not

6    "attempt[ing] to disabuse the examiner of her incorrect impression." TWi Opp'n 14. This

7    argument is equally belied by the evidence.

8         TWi's brief does not reproduce the Examiner's full statement in the Reasons for

9    Allowance. The Examiner in fact stated: "The prior art does not teach or suggest the claimed

10   invention as a pharmaceutical composition[] comprising *dexlansoprazole* with the claimed

11   components in claimed amounts that provide effective treatments of acid reflux, heartburn or

12   gastroesophageal reflux regardless of fed-or-fasted state of the patient optimizing thereby the drug

13   consumption." Ex. U at TAKEDA006876 (emphasis added). The full statement illustrates that the

14   use of that composition to treat acid-related disorders "regardless of fed-or-fasted state" was

15   essential to the Examiner's allowance of the claims.

16        Even more fundamentally, Takeda's failure to comment upon the Examiner's statement

17   cannot constitute inequitable conduct, because "there is no obligation to respond to an examiner's

18   statement of Reasons for Allowance." *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d

19   1075, 1079 (Fed. Cir. 2003); *see, e.g.*, *Cytic Corp. v. Tripath Imaging, Inc.*, Nos. Civ. A. 03–

20   11142, 03-12630, 2005 WL 3177877, at *10 (D. Mass. Nov. 28, 2005) ("TriPath is correct that the

21   applicant had no duty to respond to the patent examiner's unilateral reasons for allowance . . . .").

22   Thus, even if the Examiner did express an incorrect understanding of the prior art in the Notice for

23   Allowability, there is no support for the notion that Ms. Mueller was obligated to comment and

24   provide her view on the teachings of the prior art, or that failing to do so could constitute

25   fraudulent conduct.

26        In sum, it is undisputed that the inventors disclosed the Akiyama references to the PTO

27   and that the Examiner considered those references. TWi's inequitable conduct theory rests entirely

28   on the contention that the Applicant should have explicitly drawn the Examiner's attention to the

Akiyama references and informed her of their specific relationship to the '158 patent. TWi thus seeks to impose obligations far beyond the disclosure obligations that the PTO or the courts have recognized. Further, TWi has not shown that the alleged nondisclosure was "but for" material to patentability. Indeed it cannot be because the claimed invention — a new method of use — is not inherently disclosed in Akiyama.

### 3.    There Is No Clear And Convincing Evidence Of Intent To Deceive

As set forth above, to survive summary judgment, TWi must put forth specific facts "sufficient to *require* a finding of deceitful intent." *Therasense,* 649 F.3d at 1290. Further, any intent to deceive must be the "single most reasonable inference" that can be drawn from the evidence. *Id.* TWi's response is devoid of actual evidence of intent to deceive, let alone evidence sufficient to require such a finding.

TWi's argument is that "[t]he partial disclosure of Akiyama demonstrates intent to deceive," presumably referring to the fact that the Applicant did not supplement the disclosure of Akiyama by further informing the Examiner that the formulation tested in the '158 patent is a formulation disclosed in Akiyama. TWi Opp'n at 16-18. This is nothing other than an invitation for this Court to impermissibly "infer intent solely from materiality." *Therasense*, 649 F.3d at 1290 ("[A] district court may not infer intent solely from materiality. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality."). TWi offers no evidence, however, of improper intent.

Instead, TWi employs argument by analogy in lieu of actual evidence. TWi likens the "partial disclosure" here to *Worldwide Home Products, Inc. v. Bed, Bath and Beyond, Inc.*, No.11CV3633, 2015 WL 568710, at *10 (S.D.N.Y. Feb. 11, 2015), where the district court found that the prosecuting attorney committed inequitable conduct by failing to disclose certain material information regarding a prior art reference at issue. The facts in the two cases, however, are nothing alike.

In *Worldwide Home Products*, the prosecuting attorney disclosed to the PTO a reference ("Merrick") containing low-resolution images of certain prior art hangers. *Id.* at *2. He later specifically argued in an amendment and response that the allegedly inventive hangers had certain

1   features that "distinguishe[d] the claims" from Merrick, and he discussed the features of Merrick

2   hangers in an Examiner interview. *Id.* at *3, *5-6. In reliance on these representations, the

3   Examiner allowed the claims, specifically stating that they were allowable for the reasons argued

4   by the attorney. *Id.* at *4.

5           At the same time, however, the patent attorney was in possession of samples and high-

6   resolution photographs of actual Merrick hangers which demonstrated that these prior art hangers

7   possessed the very features that he told the Examiner they lacked. *Id.* at *3-6. In fact, the attorney

8   had been specifically advised of this fact by Defendants' counsel, who were monitoring the

9   prosecution. *Id.* at *5. The evidence also established that the attorney sought accelerated

10  examination of the claims so the patentee could immediately assert the patent in litigation against

11  a competitor. *Id.* at *4. On this record, with its abundant evidence of both materiality and intent,

12  the district court found that the only reasonable inference to draw was that the attorney intended to

13  deceive the PTO.

14          No comparable evidence of intent exists here. The record is unequivocal that the '158

15  inventors believed that the patentability of the '158 patent derived from its claiming a new method

16  of administering an existing formulation, and that they had no intent to deceive the PTO as to the

17  existence or teachings of the Akiyama references. *See* Ex. 8 (Lee Dep.) at 90:19-91:21; Ex. 15

18  (Wu Dep.) at 108:6-110:3; Ex. 10 (Mulford Dep.) at 84:4-85:2; 95:9-98:14; Ex. 6 (Atkinson Dep.)

19  at 21:23-22:10.; Ex. 9 (Mueller Dep.) at 80:17-19 ("[W]e viewed [the '158 patent] as a new

20  method of treating using a known formulation."). Summary judgment is therefore warranted. *See,*

21  *e.g.*, *Mformation Techs.*, 830 F. Supp. 2d at 829-30.

22  **III.   <u>CONCLUSION</u>**

23          For the foregoing reasons as well as those set forth in Takeda's opening brief, Takeda

24  respectfully requests that the Court grant summary judgment of no inequitable conduct as to the

25  '158 and the '187 patents.

26

27

28

Respectfully submitted,

DATED: March 12, 2015

MUNGER, TOLLES & OLSON LLP
    HEATHER E. TAKAHASHI


By: _____/s/ Heather E. Takahashi_____
    HEATHER E. TAKAHASHI

Attorneys for Plaintiffs
TAKEDA PHARMACEUTICAL CO., LTD.,
TAKEDA PHARMACEUTICALS U.S.A., INC., AND
TAKEDA PHARMACEUTICALS AMERICA, INC.