United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWI PHARMACEUTICALS, INC.,<br><br>Defendant. | Case No.: 13-CV-02420-LHK<br><br>**ORDER GRANTING TAKEDA'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 139 |

Plaintiffs Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., and Takeda Pharmaceuticals America, Inc. (collectively, "Takeda") move to strike portions of the Opening Expert Report of Dr. Edmund J. Elder, Jr., the Reply Expert Report of Dr. Edmund J. Elder, Jr., the Opening Expert Report of Dr. Michael Mayersohn, and the Reply Expert Report of Dr. Michael Mayersohn, related to opinions regarding invalidity that were allegedly not disclosed in the Invalidity Contentions served by Defendant TWi Pharmaceuticals, Inc. ("TWi"). ECF No. 139 ("Mot."). The Court finds this matter suitable for decision on the papers pursuant to Civil Local Rule 7-1(b), and hereby VACATES the hearing set for March 19, 2015, at 1:30 p.m. For the reasons explained below, the Court GRANTS Takeda's Motion to Strike.

## I.     BACKGROUND

This case involves patent infringement claims by Takeda against TWi. TWi filed an Abbreviated New Drug Application ("ANDA") under the Hatch-Waxman Act for generic forms of the branded drug Dexilant®. Takeda asserts that TWi's ANDA infringes claims 1, 2, 5, 6, 7, 11, and 16 of U.S. Patent No. 8,461,187 (the "'187 Patent") and claims 1, 2, 3, and 6 of U.S. Patent No. 8,173,158 (the "'158 Patent"). *See generally Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1282-86 (Fed. Cir. 2008) (explaining ANDA procedures and patent infringement claims under the Hatch-Waxman Act); ECF No. 129 (Dec. 10, 2014 Case Mgmt. Order) at 2 (listing asserted claims).

### A.   TWi's Invalidity Contentions

Pursuant to Patent Local Rule 3-3, TWi served its Invalidity Contentions on November 4, 2013. ECF No. 140-1 (Takahashi Decl. Ex. A) ("Invalidity Contentions"). TWi listed PCT Publication No. WO 00/09092 ("Dietrich") as a reference that "anticipate[s] and/or make[s] obvious the asserted claims of the '187 Patent." Invalidity Contentions at 5-6; *see also* ECF No. 140-6 (Takahashi Decl. Ex. F) (Dietrich). TWi then included an extended discussion of Dietrich, concluding that "Each of the asserted claims 1-2, 5-8, and 10-17 of the '187 Patent are invalid as obvious in view of Akiyama I, Muir, Beckert I, Lundberg I, Cherukuri, Percel, Dietrich, Louie-Helm, Lenaerts, and/or Odidi, alone or in combination, and further in view of the admitted prior art recited in the '187 Patent specification." Invalidity Contentions at 58. TWi did not provide a citation to Dietrich for the limitation "wherein each of the first and second doses comprise a sufficient amount of the PPI to raise plasma levels of the PPI to a threshold concentration of at least 100 ng/ml" found in Claim 1 of the '187 Patent. *Id.* at B-3; *see also id.* at 76-79 (not disclosing where Dietrich teaches the 100 ng/ml limitation). TWi also failed to identify Dietrich in conjunction with asserted dependent claims 5 and 16. *Id.* at B-4 (claim 5) and B-8 (claim 16).

TWi contended further that claims 1-11 of the '158 Patent were invalid under 35 U.S.C.

§ 112, ¶ 1 (2006 ed.),[1] for failure to satisfy the enablement requirement. *Invalidity Contentions* at 98. TWi's Invalidity Contentions included three arguments: (1) the '158 Patent failed to adequately enable the limitations in claims 10 and 11 that "bioequivalency is established with a 90% Confidence Interval between 0.80 and 1.25"; (2) the '158 Patent failed to adequately enable treatment of a "patient" because the '158 Patent only described the treatment of healthy subjects; and (3) the '158 Patent does not enable a composition that can be administered "regardless of whether the patient is under fasted or fed conditions" measured by intragastric pH. *Id.* at 98-101.

After serving the Invalidity Contentions, TWi moved to amend its contentions twice. On June 4, 2014, TWi moved to amend its Invalidity Contentions with regard to the '158 Patent. ECF No. 77. Magistrate Judge Grewal denied the motion, finding that TWi had not been diligent in seeking to amend its contentions. ECF No. 98 at 6-7. On October 30, 2014, TWi moved a second time to amend, this time asserting anticipation by an alleged offer for sale. ECF No. 118. Judge Grewal granted the motion to amend. ECF No. 128. Neither amendment is at issue in the instant Motion.

**B. TWi's Expert Reports**

TWi served its opening expert reports on December 4, 2014. *See* ECF No. 140-2 (Takahashi Decl. Ex. B) ("Elder Opening Report"); ECF No. 140-3 (Takahashi Decl. Ex. C) ("Mayersohn Opening Report").

Dr. Elder's report expresses his opinion that the asserted claims of the '187 Patent are anticipated by Dietrich in paragraphs 17, 52, and 74-86 of his opening report and paragraphs 7-26 of his reply report. *See* Elder Opening Report; ECF No. 140-4 (Takahashi Decl. Ex. D) ("Elder Reply Report"). Dr. Mayersohn also expresses his opinion that the asserted claims of the '187 Patent are anticipated by Dietrich in paragraphs 31, 66, and 95-107 of his opening report. *See*

---

[1] Paragraph 1 of 35 U.S.C. § 112 was replaced with newly designated § 112(a) when § 4(c) of the America Invents Act ("AIA"), Pub. L. No. 112-29, took effect on September 16, 2012. Because the applications resulting in the patents at issue in this case were filed before that date, the Court refers to the pre-AIA version of § 112.

3

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

Mayersohn Opening Report.

Drs. Elder and Mayersohn also opine that the '158 Patent is invalid for lack of enablement because undue experimentation would be required for one of ordinary skill to make and use a formulation that can be taken without regard to meals as required by claim 1 of the '158 patent. Elder Opening Report ¶¶ 17, 116, 129-49; Elder Reply Report ¶¶ 27-41; Mayersohn Opening Report ¶¶ 31, 141-48; ECF No. 140-5 (Takahashi Decl. Ex. E) ("Mayersohn Reply Report") ¶¶ 25-29.

After receiving TWi's opening report, Takeda contacted TWi and requested that "TWi agree in writing to withdraw and to otherwise not further pursue these new invalidity theories." ECF No. 140-7 (Takahashi Decl. Ex. G) (Dec. 10, 2014 Letter to TWi). Takeda's letter identified both the anticipation and enablement theories Takeda now moves to strike. *Id.* That same day, the Court held a case management conference and Takeda raised the possibility of filing a motion to strike. ECF No. 140-8 (Takahashi Decl. Ex. H) (Dec. 10, 2014 Hr'g Tr.) at 62:3-12. The Court required the parties to meet and confer before filing the motion to strike, *id.* at 64:4-7, which Takeda and TWi did, but the parties did not reach a resolution. ECF No. 140 (Takahashi Decl.) ¶ 10.

## II. LEGAL STANDARD

"The local patent rules in the Northern District of California . . . require[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). "For invalidity claims, the Patent Local Rules achieve this objective by requiring the party asserting invalidity to serve contentions early in the case disclosing: (1) the identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious, Patent L. R. 3-3(a); (2) whether each of those items of prior art anticipates each asserted claim or renders it obvious, Patent L. R. 3-3(b); (3) a chart identifying

where specifically in each alleged item of prior art each limitation of each asserted claim is found, Patent L. R. 3-3(c); and [(4)] any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims, Patent L. R. 3-3(d)." *Largan Precision Co., Ltd. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 6882275, at *1 (N.D. Cal. Dec. 5, 2014).

"Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014) (citing *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. 04-CV-05385-JW (HRL), 2007 WL 2103896, at *1 (N.D. Cal. July 20, 2007)).  A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-CV-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).

### III. ANALYSIS

Takeda moves to strike two invalidity theories from TWi's expert reports: (1) anticipation of the asserted claims of the '187 Patent by the Dietrich reference and (2) nonenablement of the formulation of the asserted claims of the '158 Patent.  The Court addresses each theory in turn.

**A. Anticipation of the '187 Patent Based on the Dietrich Reference**

Takeda argues that TWi did not disclose that Dietrich was an anticipating reference, and only disclosed that Dietrich rendered the claims of the '187 Patent obvious. Mot. at 8.  TWi argues that it disclosed "over and over, in its contentions that the Dietrich prior art reference 'alone' invalidated the '187 patent and specifically listed each claim limitation of the '187 patent asserted claims and explicitly stated separately that Dietrich met each limitation." ECF No. 145 ("Opp'n") at 1.  The Court agrees with Takeda.

TWi first relies on its statement that Dietrich "render[s] obvious all the asserted claims 1-2,

5-8, 10-17, *alone* in light of the knowledge of a person of ordinary skill in the art." Invalidity Contentions at 86 (emphasis added).  TWi suggests that because anticipation must be based on a single reference, this statement means that TWi disclosed Dietrich as anticipatory.  Opp'n at 2.  This is not necessarily true, however, because "[i]n appropriate circumstances, a single prior art reference can render a claim obvious." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000).  Such circumstances include instances where a single reference is considered in light of the "level of skill in the art at the time of the invention," *id.*, as suggested by TWi's Invalidity Contentions.  Anticipation and obviousness are distinct theories that require separate elements of proof.  *See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107-08 (Fed. Cir. 2003) ("Succintly put, the various . . . invalidity defenses that may be raised by a defendant [including] the several forms of anticipation . . . under § 102, and obviousness under § 103—require different elements of proof."); *see also Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference.").  Although TWi did disclose Dietrich as an obviousness reference, and even arguably as a single-reference obviousness reference, TWi did not disclose that Dietrich was anticipatory.

Furthermore, Takeda argues that TWi did not disclose where Dietrich teaches that "each of the first and second doses comprise a sufficient amount of the PPI to raise plasma levels of the PPI to a threshold concentration of at least 100 ng/ml." '187 Patent cl. 1.  Patent Local Rule 3-3(c) requires "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found."  It is undisputed that TWi did not identify any disclosure of the "100 mg/ml" limitation in Dietrich in its claim charts.  Invalidity Contentions at B-3.  Despite not complying with charting requirement in Rule 3-3(c), TWi points to the more detailed text of its Invalidity Contentions, where TWi stated that:

> Finally, with regard to the limitation of claim 1 that the "the first and second doses comprise a sufficient amount of the PPI to raise plasma levels of the PPI to a threshold concentration of at least 100 ng/ml," Beckert I, Odidi, López-Cabrera, Louie-Helm, Percel,

6

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

> Dietrich, Lenaerts, and/or Cherukuri disclose this limitation for the reasons described above, or to the extent that any of the prior art references Beckert I, Odidi, López-Cabrera, Louie-Helm, Percel, Dietrich, Lenaerts, and/or Cherukuri fail to disclose this limitation, alone or in combination, the limitation is met by at least Akiyama I, Muir, and the admitted prior art, as discussed above.

Invalidity Contentions at 90. This passage does not identify where or what in Dietrich meets the "100 ng/ml" limitations, and nothing in the "discussion above" does either.

TWi's discussion of Dietrich in the Invalidity Contentions centers on the disclosure of a single capsule with "two active compound forms" and the weights of each "active compound form." Invalidity Contentions at 88-89. Specifically, TWi cited Dietrich as teaching "a dosage form that makes it possible to delay administration of an active compound by 'allowing a once daily administration instead of a twice daily administration of the active compound to begin by combining, for example, in one and the same administration form (e.g. in a capsule) two active compound forms whose release is different.'" *Id.* (quoting Dietrich at 7). TWi also cited Dietrich's discussion of the different weights of the active compounds. *See id.* at 87 ("Dietrich discloses a first and a second treatment dose form that can be 'approximately 5 mg to 100 mg, in particular 10 mg to 80 mg, preferably 20 mg to 40 mg per day, calculated on the free acid'" (quoting Dietrich at 8)). TWi did not identify any portion of Dietrich that teaches the "100 ng/ml" limitation.[2]

The Court's decision to strike portions of the expert reports is consistent with *ASUS*. 2014 WL 1463609. In *ASUS*, the district court denied a motion to strike an anticipation theory where the invalidity contentions identified each limitation in the asserted claim. *Id.* at *9. The court in *ASUS* did, however, strike portions of an expert report that opined on anticipation for a second reference, because the invalidity contentions did not disclose where the second reference taught each limitation of the asserted claims. *Id.* Here, the Court strikes the anticipation theory because

---

[2] The Court also notes that TWi's Motion for Summary Judgment cites the label of the alleged commercial embodiment of Dietrich (Protonix ®) and a 1996 scientific article as teaching the 100 ng/ml limitation. *See* ECF No. 143-3 (Mizerk Decl. Ex. A) ("Invalidity (Anticipation) Chart for US 8,461,187") at page 9-10 of PDF. Neither reference was cited in the Invalidity Contentions.

7

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

the Invalidity Contentions did not disclose where Dietrich teaches *each* limitation of the asserted claims.  *See* Patent Local R. 3-3(c).

As additional support for its Motion to Strike, Takeda argues that TWi's expert cannot rely on Example 2 on page 6 of Dietrich, which Takeda characterizes as an "entirely different portion of Dietrich" than was cited in TWi's Invalidity Contentions.  Mot. at 9.  The Court does not agree that Example 2 is divorced from the portions of Dietrich that TWi actually cited, and would allow TWi to rely on Example 2 in support of an obviousness argument.  In the Invalidity Contentions, TWi cited page 8 of Dietrich, which discloses a formulation that "can be evenly or unevenly divided over the two administration forms in the combination according to the invention.  A more or less equal division is preferred."  Dietrich at 8.  Example 2 of Dietrich elucidates the "combination according to the invention."  *Id.* at 6.  TWi was not hiding anything about Dietrich in failing to cite Example 2, and its Invalidity Contentions gave Takeda fair notice of its obviousness case.  Furthermore, the Dietrich reference is only 11 pages, so it was not burdensome for Takeda to review the entire reference to understand the full scope of the Dietrich disclosure.  Regardless, Example 2 has nothing to do with the 100 ng/ml limitation, and does not remedy TWi's failure to comply with Patent Local Rule 3-3(c).  Indeed, TWi does not cite Example 2 for this limitation in its Motion for Summary Judgment.  *See* Invalidity (Anticipation) Chart for US 8,461,187 at 9-10.  Thus, although TWi could rely on Example 2 of Dietrich in support of an obviousness argument, TWi cannot rely on Example 2 in support of an anticipation argument.

As explained above, TWi failed to list where each element of the asserted claims appears within the Dietrich reference and failed to disclose that Dietrich was allegedly anticipatory.  Accordingly, TWi cannot rely on Dietrich as anticipatory at trial or in its Motion for Summary Judgment.  *ASUS*, 2014 WL 1463609, at *1.  The Court therefore GRANTS Takeda's Motion to Strike as to the Dietrich reference.

**B. Enablement of the '158 Patent Based on Failure to Disclose Specific Formulations**

Claim 1 of the '158 Patent claims a method of treating comprising "administering to a

1  patient suffering from heartburn, acid reflux or gastroesophageal reflux, regardless of whether the
2  patient is under fasted or fed conditions, a therapeutically effective amount of the pharmaceutical
3  composition." '158 Pat. Cl. 1.  Pursuant to this Court's claim construction, "regardless of whether
4  the patient is under fasted or fed conditions" means "without regard to food."  *See* ECF No. 78
5  (Order Construing Claims) at 22.  TWi now argues that the '158 Patent does not enable one of
6  ordinary skill in the art to formulate a composition that can be administered without regard to
7  food.
8      Takeda argues that TWi's current enablement argument was not disclosed in its Invalidity
9  Contentions.  Mot. at 10.  Takeda characterizes the current enablement theory as a "lack of
10 guidance in preparing a formulation that would meet the 'without regard to food' limitation in
11 claim 1 of the '158 Patent."  *Id.*  TWi's characterization is essentially the same, but with more
12 detail: "Because a person of skill does not know which formulation the TAP inventors used to
13 meet their 'without regard to meals' limitation, and because it is undisputed that a person of skill
14 would have to pick a trial and error formulation and then conduct testing at more than $1 million
15 per test to determine whether this limitation is met, the asserted claim of the '158 patent is not
16 enabled."  Opp'n at 4-5 (quoting TWi's Motion for Summary Judgment, ECF No. 142-4 at 20).
17 TWi contends that this "trial and error" constitutes undue experimentation, rendering the '158
18 Patent invalid for lack of enablement.  *See* TWi's Motion for Summary Judgment at 20 (citing
19 *ALZA Corp. v. Andrx Pharma., LLC*, 603 F.3d 935, 941 (Fed. Cir. 2010)).  Both parties refer to
20 this as the "formulation" theory.
21     Takeda argues that TWi's Invalidity Contentions did not disclose the formulation theory.
22 Mot. at 10.  Takeda argues that TWi disclosed three theories of non-enablement.  *Id.* (citing
23 Invalidity Contentions at 98-101).  TWi argues that the first theory identified by Takeda is actually
24 two separate theories, and that the first of those represents the formulation theory.  Opp'n at 4.[3]

---

[3] TWi also argues that it could not disclose the full scope of its formulation theory at the time of the Invalidity Contentions because "TWi only discovered, through multiple depositions and the review of TAP documents" the full theory.  Opp'n at 5.  If that were the case, TWi should

9

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

Having reviewed the Invalidity Contentions, the Court finds Takeda's position more persuasive.

> TWi's Invalidity Contentions assert the following:
>
>> Claim 1 recites the limitation "regardless of whether the patient us [sic] under fasted or fed conditions." Additionally, claim 9 recites the limitation "wherein the administration of the composition to a human subject in a fed state is bioequivalent to administration of the composition to a human subject in a fasted state." Claims 10 and 11 depend from Claim 9, and each of claims 10 and 11 recite that bioequivalency is established with a 90% Confidence Interval between 0.80 and 1.25. As discussed above, the prior art discloses these limitations. However, to the extent Takeda argues that these limitations were not disclosed and/or not enabled in the prior art such that they are novel over the prior art disclosures, the '158 Patent fails to adequately describe and/or enable these limitations. . . .
>>
>> Table 6 includes pharmacokinetic data comparing $C_{max}$, $AUC_t$, and $AUC_\infty$ for "Regimen B vs Regimen A (Reference)," yet the data for the 90% CI for each of the pharmacokinetic parameters includes values outside of the 0.80-1.25 range. ('158 Patent at 25:30-35.) Accordingly, to the extent the limitations of claims 9, 10, and 11, above, were not disclosed and/or not enabled in the prior art, claims 1-11 are invalid for failure to enable the claimed subject matter and/or for failure to satisfy the written description requirement.

Invalidity Contentions at 98-99 (block quote from the '158 Patent omitted). TWi argues that the sentence "Claim 1 recites the limitation 'regardless of whether the patient us [sic] under fasted or fed conditions'" would have put Takeda on notice of TWi's formulation theory. Opp'n at 4.

The Court disagrees. Nothing in the above passage, or anywhere else in the Invalidity Contentions, discusses formulations. Instead, the Invalidity Contentions argue that claims 1-11 of the '158 Patent are not enabled because certain bioequivalency test results lack statistical significance. The Court does not see how this theory—a failure to adequately enable bioequivalency with statistical significance—could reasonably have informed Takeda of the formulation theory. In addition, nothing in the Invalidity Contentions suggested that formulating the claimed composition would require undue experimentation. The only time "undue

---

have moved to supplement the Invalidity Contentions, and may have been able to show diligence if the supporting evidence had been truly revealed through late discovery.

10

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

experimentation" is mentioned is in connection with the '187 Patent, not the '158 Patent. *See* Invalidity Contentions at 102-04. As the formulation theory was not disclosed in the Invalidity Contentions, TWi cannot rely on it. *ASUS*, 2014 WL 1463609, at *1. The Court therefore GRANTS Takeda's Motion to Strike as to the formulation theory on enablement.

**C. Prejudice Arguments**

Takeda asserts that the Court need not consider whether Takeda was prejudiced by the failure to disclose. Mot. at 10-11. In support of this argument, Takeda cites *Largan*, 2014 WL 6882275, at *5, *Life Technologies Corp. v. Biosearch Technologies, Inc.*, No. C 12-00852 WHA, 2012 WL 4097740, at *3 (N.D. Cal. Sept. 17, 2012), and *Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012). Because, as explained below, the record reflects that TWi was not diligent in seeking to include the missing theories in its invalidity contentions, the Court agrees that Takeda need not show prejudice.

This analysis stems from the "good cause" standard used in deciding a motion to amend invalidity or infringement contentions under Patent Local Rule 3-6. *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 200-01 (N.D. Cal. 2009) (explaining "good cause" standard). In order to meet the "good cause" standard, the party seeking to amend its contentions must show both (1) that the party was diligent in seeking to amend and (2) that the nonmoving party will not be prejudiced by the amendment. If the party seeking to amend fails to show diligence, the court need not consider prejudice. *See O2 Micro*, 467 F.3d at 1367-68.

The cases cited by Takeda all support applying the two-part "good cause" analysis to a motion to strike. In *Largan*, the district court explained the relationship between a motion to strike expert testimony and a motion to amend invalidity contentions:

> Amendments to invalidity contentions are permitted upon a timely showing of good cause. *See* Patent L. R. 3-6. The local rules on contentions are "not a straitjacket into which litigants are locked from the moment their contentions are served. There is a modest degree of flexibility, at least near the outset." *Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.,* No. 06-CV-04206-WHA, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007). The flip side of this flexibility in amending, however, is that "[a]ny invalidity

11
Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

> theories not disclosed pursuant to Local Rule 3-3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.,* No. 11-CV-5341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014). A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC,* No. 12-CV-02099-JST (NC), 2014 WL 1463609, at *1 (N.D.Cal. Apr. 11, 2014).

2014 WL 6882275, at *1. The district court then went on to reject the accused infringer's argument that a party moving to strike invalidity contentions *must* show prejudice:

> Genius also argues that it is improper to strike Dr. Barbastathis's report absent a showing of prejudice to Largan due to its failure to include this theory in its invalidity contentions. Not so. *See Verinata,* 2014 WL 4100638, at *5 (striking invalidity contentions even where no prejudice was shown); *ASUS,* 2014 WL 1463609, at *8 (same).

*Id.* at *5. The two cases cited in support of the above conclusion that a showing of prejudice is not required both discuss prejudice as it relates to the "good cause" standard applied to motions for leave to amend contentions.

First, in *Verinata*, considering a motion to strike, the district court explained that

> [I]n this district, a party can only change the theories of invalidity contained in its contentions upon a showing of good cause, which requires a showing of both diligence and a lack of prejudice. . . If a party cannot show that it acted diligently in moving to amend its invalidity contentions, the Court need not address the issue of prejudice. . . . Here, Sequenom has failed to show its diligence. Sequenom does not provide any explanation as to why it did not cite and chart the Lo Lancet reference in its contentions with respect to the '017 patent and the '018 patent, particularly when it is, as Sequenom contends, a "seminal" piece of prior art and Sequenom cited and charted the reference with respect to the '415 patent.

*Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *5 (N.D. Cal. Aug. 20, 2014) (citations omitted). Thus, *Verinata* stands for the proposition that a court need not consider prejudice if a party fails to show diligence. *Verinata* did not find prejudice irrelevant to a motion to strike. *ASUS* is similar, finding that the party defending the motion to strike was both not diligent *and* that the moving party would be prejudiced by the newly disclosed infringement

12

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

theories not contained in operative infringement contentions:

> RR does not even argue, yet alone demonstrate, that at the time it served its infringement contentions it was unable to identify more specifically products within the product series, and the Court will not make that assumption. Even if RR did not know at the time of serving its contentions about the specific model numbers of products within the series, it should have amended its contentions to add this information once ASUS provided discovery for these products and the specific model became known to RR. . . . It was not unreasonable for ASUS to believe that only those products specifically identified in parentheticals by model number, organized by series, were the accused products. ASUS would be prejudiced by adding new products into the case at this late stage, and RR has not demonstrated that its failure to name the products was justified.

*ASUS*, 2014 WL 1463609, at *7.

The other two cases cited by Takeda are also consistent with the "good cause" analysis: if the party opposing the motion to strike cannot show diligence, the court need not consider prejudice. For example, in *Life Technologies*, the district court rejected an argument that the motion to strike should be denied due to a lack of prejudice: "Defendants have not argued for, and there is nothing in this record to support, a finding of reasonable diligence to amend the disclosures. This is fatal to defendants' argument because unless reasonable diligence has been found, prejudice need not be considered in failures to comply with patent local rules." 2012 WL 4097740, at *3. *Apple*, ruling on a motion to amend, is the same: "Only if the moving party is able to show diligence may the court consider the prejudice to the non-moving party." 2012 WL 1067548, at *2.

Here, the record shows that TWi was not diligent in disclosing either invalidity theory at issue. TWi was not diligent in seeking to include an anticipation theory based on Dietrich. As explained *supra*, TWi did not disclose this theory in its Invalidity Contentions, even though TWi had possession of the entire reference and could have included an anticipation theory at the time TWi served its Invalidity Contentions.

Nor was TWi diligent in including the formulation theory. Although TWi argues that it did not develop the specific factual support for this theory until later in discovery, TWi should

13
Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

have recognized the formulation theory from reading the specification of the '158 Patent. *See* Opp'n at 5 (arguing that TWi could not have disclosed the "extent" or "full expert report" in support of its formulation theory until discovery was underway). TWi was not required to include a complete expert analysis in its Invalidity Contentions. *See Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at * 5 (N.D. Cal. Apr. 24, 2014) ("In patent litigation, expert reports are expected to provide more information than is contained in infringement contentions."). Here, the crux of TWi's nonenablement theory is that the entire scope of the '158 Patent in not sufficiently enabled, because only one exemplary formulation (TAK-390 MR) is disclosed. *See* ECF No. 154-4 at 12 (TWi Summ. J. Reply Br.) at 13 (Takeda "tested only one formulation to see whether it met the 'without regard to food' limitation and had no idea whether other formulations would also meet it"). This theory is apparent from the face of the '158 Patent, which only includes test results for one formulation. '158 Patent at cols. 26-27. TWi therefore could have included the formulation theory in its Invalidity Contentions.

  As TWi was not diligent, the Court, for the reasons explained above, may grant Takeda's motion to strike without also considering prejudice. In any event, the Court recognizes that Takeda has made a plausible argument that it was prejudiced by TWi's new invalidity theories. Specifically, Takeda "had less than three weeks to analyze and respond to TWi's new theories and to work with its experts to prepare corresponding rebuttal invalidity expert reports, which were served on December 22, 2014." Mot. at 11. In response to Takeda's prejudice argument, TWi does not dispute that prejudice is not required, but instead argues that because Takeda was able to "provide[] fulsome responses" to TWi's expert reports, Takeda was not prejudiced. Opp'n at 5-6. The Court agrees that Takeda was prejudiced by the failure to comply with Patent Local Rule 3-3 because Takeda was forced to wait until its rebuttal expert reports to address the Dietrich and enablement theories Takeda now moves to strike.

  As a final note, the Court addresses TWi's argument that the Motion to strike "punishes" TWi for complying with the Court's case narrowing orders, and would be prejudicial to TWi.

14

Case No.: 13-CV-02420-LHK
ORDER GRANTING TAKEDA'S MOTION TO STRIKE

Opp'n at 1, 6. This argument is unpersuasive. Case narrowing is not an excuse to raise new arguments. If TWi believed that Dietrich anticipated the '187 Patent, or that the formulation of the composition claimed in the '158 Patent was not enabled, TWi should have disclosed that position when it first served its Invalidity Contentions, and then dropped its other contentions through case narrowing. The Court is not "punishing" TWi for its narrowing; the Court is granting Takeda's Motion because TWi did not comply with Patent Local Rule 3-3.

## IV. CONCLUSION

For the reasons explained above, the Court GRANTS Takeda's Motion to Strike.

**IT IS SO ORDERED.**

Dated: March 17, 2015

Lucy H. Koh

LUCY H. KOH
United States District Judge